# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **CLARENCE R. BURRIS** | * | **CIVIL ACTION NO.  13-0353** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Clarence Ray Burris protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on January 18, 2011. (Tr. 145-152).[1] He alleged disability as of October 31, 2009,[2] because of degenerative disc disease nerve damage in his neck/nerves, arms, and back. (Tr. 164). The state agency denied the

---

[1] Burris filed prior applications for disability benefits on October 8, 2008. They were denied initially by the state agency, and then again on November 3, 2009, by an Administrative Law Judge ("ALJ"). (Tr. 57-68). On January 4, 2011, the Appeals Council denied Burris's request to review the ALJ's decision. (Tr. 71, 161). Burris did not petition this court for further review of his prior applications. (Tr. 28).

[2] At the hearing, Burris agreed to amend his disability onset date to November 4, 2009 – the day after the ALJ's decision denying his prior application. (Tr. 28-29).

claims at the initial stage of the administrative process.  (Tr. 70-94).  Thereafter, Burris requested

and received a September 23, 2011, hearing before Administrative Law Judge ("ALJ") Gordan

Momcilovic.  (Tr. 24-56).  In an October 18, 2011, written decision, however, the ALJ

determined that Burris was not disabled under the Act, finding at step four of the sequential

evaluation process that he was able to return to his past relevant work as a general clerk.  (Tr. 9-

20).  Burris appealed the adverse decision to the Appeals Council.  On December 28, 2012,

however, the Appeals Council denied Burris's request for review; thus the ALJ's decision

became the final decision of the Commissioner.  (Tr. 1-3).

On February 19, 2014, Burris sought review before this court.  He alleges the following

errors,

> (1)     the ALJ's residual functional capacity assessment is not supported by substantial
>          evidence; and
>
> (2)     the ALJ's step four determination is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa

v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v.

Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a

preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

3

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.     Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period.  (Tr. 14).  At step two, he found that claimant suffers severe impairments of cervical disc disease status post-history of surgery; bilateral ulnar decompression neuropathy, left greater than right; and gout.  (Tr. 14-15). Id.[3]  He concluded, however, that these impairments were not severe enough to meet or

---

[3]  The ALJ determined that Burris's medically determinable impairments of tobacco abuse, depressive disorder, anxiety disorder, and substance-induced mood disorder, were non-severe.  (Tr. 15).  Plaintiff does not challenge this determination on appeal.

4

medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 16).

## II.      Residual Functional Capacity

The ALJ next determined that Burris retained the residual functional capacity ("RFC") to perform light work,[4] except that he can only occasionally rotate his head side to side and up/down, needs to use a cane at will for balancing, and lift and carry with the left (helper) arm no more than 10 pounds either occasionally or frequently.  (Tr. 16).  The ALJ further found that Burris had no limitation whatsoever to his right (dominant) arm.  *Id*.

## III.     Step Four

At step four, the ALJ employed a vocational expert to find that Burris was able to return to his past relevant work as a general clerk, Dictionary of Occupational Titles ("DOT") Code 209.562-010, as that job is *generally* performed.  (Tr. 19-20).[5]

## **Analysis**

---

[4] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[5] Past relevant work is defined as "the actual demands of past work or 'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'"  *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

I.       **Residual Functional Capacity**

a)       Chronology of Relevant Medical Evidence

With the exceptions of the consultative examinations, the entire medical file in this

matter reflects treatment that Burris received at the Veterans Administration ("VA").  Some of

the records document treatment for tooth infections, lesions, and other mundane matters.  In

addition, the record is littered with multiple copies of the same treatment notes.  Also, because

plaintiff does not challenge the ALJ's resolution of the effects of his mental impairments, the

court will not recite the medical evidence that addresses those impairments. Instead, the ensuing,

non-exhaustive chronology focuses upon Burris's physical impairments and their effects.

A January 30, 2009, MRI of the cervical spine showed that Burris had a decompressing

laminectomy from C3-C6.  (Tr. 303-304).  It also showed progressive degenerative spondylosis

most significant at C3-4 wherein there was mild central spinal canal stenosis and prominent or

significant neural foraminal narrowing.  *Id*.

A March 9, 2009, neurological consultation indicated that Burris suffered from limited

range of motion in the neck and numbness of both hands.  (Tr. 323-325).  An electromyogram

administered on March 18, 2009, confirmed that Burris suffered from bilateral ulnar neuropathy

caused by compression at the elbows.  (Tr. 318-320).

Burris returned to the neurosurgery outpatient clinic on April 27, 2009, for follow-up of

the EMG study.  (Tr. 399-400).  Despite his bilateral ulnar nerve compression, Burris had 5/5

motor strength in the bilateral upper extremities.  *Id*.  He also had mild tenderness to palpation

beneath the elbows bilaterally.  *Id*.  He was offered intervention, but he declined surgery at the

time.  *Id*.

On May 14, 2009, Burris reported his usual neck pain and numbness of the forearms.

6

(Tr. 295-296).  He was diagnosed with hypertension – controlled; mood disorder; cervical spine degenerative disc disease, status post-surgery; bilateral ulnar nerve compression; and dyslipidemia.  *Id*.

On June 8, 2009, an occupational therapist fitted Burris with "heelbos" for use during the day.  (Tr. 239).  Although Burris presented with normal sensation, the therapist noted that he suffered from other symptoms consistent with nerve compression.  *Id*.

On August 11, 2009, Burris said that he could not keep his appointment at the VA because he had started a new job.  (Tr. 291).

On January 12, 2010, Burris was seen for follow up of chronic medical management. (Tr. 286).  He requested reevaluation by neurosurgery for his bilateral ulnar nerve compression. (Tr. 287).

Burris returned to the VA neurosurgery clinic on February 19, 2010, for followup of his bilateral ulnar compression neuropathy.  (Tr. 279-280).  Burris reported that he had attempted to return to work doing computer work.  *Id*.  However, he complained that his neck locked up and that his fingers spasmed and locked into position.  *Id*.  He has not regained his strength postoperatively.  *Id*.  He also admitted to tingling in his medial palms.  *Id*.

The VA attempted to call Burris on April 29, 2010, but his "wife" said that he was at work.  (Tr. 276).  Nonetheless, that same day, Burris reported to the VA with complaints of left knee and hip pain following a motor vehicle accident.  (Tr. 269).  An x-ray of the left hip showed probable bone island in the left femoral head, and mild degenerative joint disease of the left hip. (Tr. 307).  Also, an x-ray of the left knee showed mild degenerative joint disease, probable small suprapatellar joint effusion, and probable bone infarct in the distal femur.  (Tr. 308).

On June 5, 2010, Burris went to the VA emergency room with complaints of a two-day

7

history of left ankle pain radiating to his knee.  (Tr. 256).

On August 19, 2010, Burris returned to the VA for follow-up for his gout.  (Tr. 246).  He reported that his pain was usually a 5/10, and at worst, an 8/10.  (Tr. 249).  He conceded, however, that the pain at the 5/10 level was acceptable

VA records from September 16, 2010, document that Burris was being followed for gout, lower back pain, disorders of refraction and accommodation, ulnar nerve lesion/compression, abnormal liver function tests, dyslipidemia, heart murmurs, cervical spinal stenosis, muscle weakness, hypertension, and depression.  (Tr. 239).

On November 26, 2010, the VA issued Burris a cane.  (Tr. 310-311).

Burris called the VA on February 16, 2011, to request a neurosurgery consultation because of problems with his left arm and hand.  (Tr. 440).  Thereafter, he returned to the neurosurgery clinic at the VA on March 21, 2011, with complaints of chronic neck pain.  (Tr. 439-440).  He rated his pain as a 4/10.  *Id*.

On March 15, 2011, at the request of the state agency, Burris underwent a consultative physical examination administered by Julana Lopez, M.D.  (Tr. 424-428).  At that time, Burris complained of left arm weakness and neck pain caused by cervical stenosis.  *Id*.  He also reported a diagnosis of bilateral ulnar compression.  *Id*.  He stated that these conditions cause his neck and hands to begin to cramp after sitting or standing for a couple of hours.  *Id*.  He further complained of low back pain, and claimed loss of sensation in his arms and fingertips, and muscle weakness in his legs and left arm.  *Id*.  Nonetheless, he remained independent in his activities of daily living.  *Id*.

Upon examination, Dr. Lopez noted that Burris exhibited 3/5 muscle strength in his left biceps, deltoid, and triceps.  *Id*.  He also demonstrated decreased light touch sensation in the area

of C5 on the left arm; otherwise sensation remained intact.  *Id*.  His motor strength was 5/5 bilaterally, except as noted above.  *Id*.  His grip strength also was 5/5 bilaterally, with dexterity intact.  *Id*.  His gait was normal and station stable.  *Id*.  Dr. Lopez diagnosed cervical stenosis, s/p laminectomy 2004 per records; bilateral ulnar neuropathy per medical records; muscle weakness, left upper arm, lower motor neuron deficit; chronic lower back pain; muscle spasms, neck; and hypertension, poorly controlled.  *Id*.

Lopez opined that because of the cervical neuropathy, Burris should be able to sit for four hours, stand for four hours, and walk for four hours in a workday.  *Id*.  He also can lift or carry objects weighing less than 15 pounds.  *Id*.  Because of his ulnar neuropathy, Burris was restricted to writing and typing no more than four hours per day.  *Id*.  He did not require an assistive device.  *Id*.  He was able to interact effectively and peaceably with others, understand and follow instructions, and communicate without difficulty.  *Id*.

b)    Discussion

In this case, the sole physician to have offered an opinion regarding the effects of plaintiff's physical impairments was the consultative physician, Dr. Lopez (sometimes incorrectly referred to by the ALJ in his decision as "Dr. John W. Mooring").  As recounted above, the limitations recognized by Dr. Lopez exceed the limitations credited by the ALJ.  Specifically, Dr. Lopez opined that the activities of sitting, typing, and writing were limited to four hours in an eight hour period.  In addition, she stated that he only could lift objects weighing less than 15 pounds.

Under the regulations, the ALJ must consider the findings and opinions of the state agency medical and psychological consultants.  20 C.F.R. § 404.1527(e)(2)(i).  Furthermore, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge

9

must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . ."  20 C.F.R. § 404.1527(e)(2)(ii).  Moreover, although "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion,"[6] the ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

In his decision, the ALJ stated that he rejected Dr. Lopez's four hour limitation on writing and typing because he could not find any objective evidence in the record to support the limitation.[7]  However, Dr. Lopez expressly derived this limitation from Burris's bilateral ulnar neuropathy, which was diagnosed by the VA via electromyogram.  (Tr. 426, 323-325).  In other words, the record does not support the ALJ's proffered rationale for discounting Dr. Lopez's writing and typing restriction.  In addition, the ALJ did not provide any reason at all for rejecting Dr. Lopez's limitations on Burris's ability to sit and lift.

Apparently in lieu of Dr. Lopez's opinion, the ALJ decided to give "greater weight to the opinions of the claimant's treating physician and clinicians, due to their areas of expertise, longitudinal treatment history and frequency of contact with the complaint."  (Tr. 19).  He added that "no treating physician opined that the claimant is disabled and/or unable to work."  *Id*.

---

[6] *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation and internal quotation marks omitted).

[7] In contrast, at another point in his decision, the ALJ stated that he afforded "great weight" to the "assessment of the state agency physical and psychological consultative examiners, as their opinions are consistent with the overall medical evidence of record and the findings of the undersigned."  (Tr. 19).  This statement is confusing because the sole state agency consultative physician was Dr. Lopez, with whom the ALJ disagreed, at least in part.

However, the record does *not* contain an opinion from a treating physician or clinician regarding the effects of plaintiff's physical impairments.  Moreover, the fact that no treating physician opined that Burris was disabled or unable to work does not shed any light on his RFC.[8]

Ultimately, the ALJ simply divined Burris's RFC based on the ALJ's own assessment of the effects of Burris's physical impairments.  While an ALJ need not always ground his RFC on a physician's medical source statement, his RFC still must be supported by substantial record evidence.  For instance, in *Ripley v. Chater*, the Commissioner argued that the medical evidence substantially supported the ALJ's decision.  *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995).  Specifically, the Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles.  *Id*.  However, without reports from qualified medical experts, the Fifth Circuit was unable to conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*.  The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment.  *Id*.

The instant case is materially indistinguishable from *Ripley, supra*.  Plaintiff's testimony does not support the ALJ's RFC.  (Tr. 35-36, 170, 175).  Furthermore, the ALJ concluded that he "considered the complete evidence of record and [found] that the state agency examiners' assessments of the claimant's ability to perform work activity are well supported and are consistent with the findings of the [ALJ]."  (Tr. 19).  As discussed above, however, the lone medical source statement by Dr. Lopez is not consistent with the ALJ's RFC.  To the extent that the ALJ was referring to the physical RFC completed by Eric Godfrey, SDM, the state agency

---

[8]  For that matter, even Dr. Lopez did not opine that Burris was disabled.

11

examiner assigned to this case, the court observes that Mr. Godfrey is not a medical professional; rather, he is an agency "single decision maker" ("SDM").  *See* Tr. 45.  Because an SDM or disability examiner is not an acceptable medical source (or even a medical source at all), Godfrey's RFC finding that he constructed for purposes of the agency's initial determination, is not afforded the same weight as an opinion of an agency medical or psychological consultant. *See* 20 C.F.R. §§ 416.927(f) and 416.913(a)-(d), *see also* Program Operations Manual System ("POMS") DI 24501.001 THE DISABILITY DETERMINATION SERVICES (DDS) DISABILITY EXAMINER (DE) – MEDICAL/PSYCHOLOGICAL CONSULTANT (MC/PC).  In fact, on September 14, 2010, the Commissioner's Chief ALJ issued a memorandum affirming that findings by agency SDMs are not opinion evidence to be considered by ALJs in their decisions.  *See* CONSIDERATION OF SINGLE DECISIONMAKER (SDM) RFC ASSESSMENTS AND OTHER FINDINGS – REVISED (Sept. 14, 2010) discussed in *James v. Astrue*, Civ. Action No. 11-2129, 2013 WL 443846 (W.D. La. Jan. 17, 2013) *report and recommendation adopted,* 2013 WL 443819 (W.D. La. Feb. 5, 2013).

In sum, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

II.      **Step Four**

Because the foundation for the ALJ's step four determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that Plaintiff is not disabled, also is not supported by substantial evidence.

The foregoing notwithstanding, plaintiff argues that the ALJ's step four determination also was tainted by the vocational expert's erroneous testimony that the position of General Clerk, DOT Code 209.562-010 is performed at the *sedentary* exertional level, when, in actuality, it is performed at the *light* level.  *See* Tr. 19, 43.  This misapprehension potentially undermines the assumptions inherent in the vocational expert's testimony.

The Commissioner concedes error, but argues that it was harmless because plaintiff could perform his past relevant work as a general clerk *as he actually performed it.*  However, Burris indicated on his Work History Report that his prior job required him to lift 25 pounds, which, of course, exceeds the 20 pound maximum associated with even light work.  (Tr. 181).[9]  In short, the court cannot conclude that the vocational expert's error (as relied upon by the ALJ) was harmless.  This additional error provides an independent basis for remand.

<u>**Conclusion**</u>

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

---

[9]  Plaintiff initially indicated that the heaviest weight that he lifted was 10 pounds, but that he frequently lifted 25 pounds.  (Tr. 181).  He likely transposed these responses.  He also did not know what the objects were that he lifted or how often and far he carried them.  (Tr. 181).

consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of March 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

14